1

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                   NORTHERN DIVISION AT COVINGTON
                                - - -
 3
     UNITED STATES OF AMERICA,      : Docket No. 13-cr-20
 4                                  :
                         Plaintiff, : COVINGTON, Kentucky
 5                                  : Wednesday, January 24, 2024
                                    : 11:00 a.m.
 6   v.                             :
                                    :
 7   CLARENCE TONEY, III,           :
                                    :
 8                       Defendant. :

 9                                - - -
                         TRANSCRIPT OF RESENTENCING
10                      BEFORE DANNY C. REEVES
            UNITED STATES CHIEF DISTRICT COURT JUDGE
11                                - - -

12   APPEARANCES:

13   For the United States:      KYLE M. WINSLOW, ESQ.
                                 U.S. Attorney's Office
14                               207 Grandview Drive
                                 Suite 400
15                               Ft. Mitchell, Kentucky 41017

16   For the Defendant:          ROBERT K. MCBRIDE, ESQ.
                                 Taft, Stettinius & Hollister, LLP
17                               1717 Dixie Highway
                                 Suite 910
18                               Covington, Kentucky 41011

19   Court Reporter:             ELAINE S. HABERER, RPR, FCRR
                                 Official Court Reporter
20                               101 Barr Street
                                 Lexington, Kentucky 40507
21                               (859) 469-7456

22

23

24

25       Proceedings recorded by mechanical stenography,
     transcript produced by computer.
</pre>

1           (Proceedings commenced in open court at 11:00 a.m.)

2                THE COURT:  Thank you.  Madam Clerk, would you please

3      call the matter scheduled for 11:00?

4                COURTROOM DEPUTY:  Covington Criminal 13-20, United

5      States versus Clarence Toney, III.

6                THE COURT:  Thank you.  Would counsel state their

7      appearances, please?

8                MR. WINSLOW:  Good morning, Your Honor.  Kyle Winslow

9      on behalf of the United States.

10               THE COURT:  Thank you, Mr. Winslow.

11          Good morning.

12               MR. MCBRIDE:  Good morning, sir.  I am here

13      representing Mr. Toney, who is here to my right, sir.

14               THE COURT:  Thank you.  This matter is scheduled for

15      a hearing on supervised release violations that are set

16      forth -- or alleged violations -- set forth in two reports:

17      The first, June 4th, 2021, and the second, October 27th, 2021.

18          This matter proceeded to a hearing on the violations

19      earlier on November 5th, and thereafter -- and on appeal, the

20      defendant raised an issue that he had not received written

21      notification of the October 27th report, which includes the

22      second violation.  So the matter was remanded back for further

23      proceedings, and those are scheduled for today.

24          Are the parties ready to proceed?

25               MR. WINSLOW:  Yes, Your Honor.

3

1           THE COURT:  Thank you.

2           MR. MCBRIDE:  Yes, Your Honor.  I do have an unusual

3  request from Mr. Toney.

4           THE COURT:  Yes, sir.

5           MR. MCBRIDE:  He would like to address the Court.  I

6  do not know what the context is.  I have advised him against

7  it, but I did tell him I would make the request.  I wasn't

8  sure whether or not the Court would permit it.

9           THE COURT:  All right.  That request will be denied

10  at this time.  He, of course, is entitled to make a statement

11  in allocution at the appropriate time, but inasmuch as he's

12  represented by counsel, he'll need to wait to make any

13  statements to the Court.

14           MR. MCBRIDE:  Thank you, Your Honor.

15           THE COURT:  Yes, sir.  And let me confirm that the

16  parties have, in fact, received copies of both the original

17  supervised release violation report as well as the addendum to

18  the report.

19           MR. WINSLOW:  Yes, Your Honor.

20           THE COURT:  Mr. McBride?

21           MR. MCBRIDE:  Yes, Your Honor.

22           THE COURT:  All right.  Thank you.  I'm assuming that

23  the allegations contained in the two reports are contested at

24  this point; is that accurate?

25           MR. MCBRIDE:  Yes, Your Honor.

4

1          THE COURT:  All right.  Thank you.

2          MR. WINSLOW:  Your Honor, before we get started, I

3     did want to address one issue.

4          THE COURT:  Yes, sir.

5          MR. WINSLOW:  That's the second violation.  It's the

6     violation that the defendant shall not associate with persons

7     engaged in criminal activity or convicted of a felony.  The

8     United States is going to move to dismiss that second

9     violation at this point.

10         That violation is based on recorded jail calls where the

11    defendant engaged in obstruction of justice with another

12    individual.  We still have those phone calls, and we have a

13    subsequent phone call between a case agent and who we believe

14    is the same individual in those original calls.

15         What the case agent, frankly, just cannot recall is how

16    he specifically identified that caller to Mr. Toney as Youssef

17    Harris.  And so I just believe that's a problem related to the

18    time that's elapsed in this case.

19         So for that reason, the United States is going to move to

20    dismiss violation number two and simply proceed with the more

21    serious violation, violation number one, Your Honor.

22         THE COURT:  All right.  Thank you.  I assume there's

23    no objection to the dismissal of the second violation.

24         MR. MCBRIDE:  No, Your Honor.  In fact, I had

25    listened to those tapes myself and reviewed them with my

5

1    client recently.  I think the representation of the United

2    States is accurate.  It's not really possible to confirm at

3    this point, outside of testimony from the agent, that one

4    could tell that it was Mr. Boulden and Mr. Harris.

5              THE COURT:  All right.  Very well.

6              MR. MCBRIDE:  Thank you, Your Honor.

7              THE COURT:  I will, however, advise or request that

8    the clerk file the addendum to the report in the record so

9    that the record in this proceeding is complete with regard to

10   that second alleged violation.

11       We'll then proceed with violation number one.  Let me

12   take a moment to review the nature of the violation and

13   potential penalty before we do proceed.

14       Violation number one is outlined, or the alleged

15   violation is outlined in the original report dated June 4th,

16   which has been filed of record in the proceeding.  There was

17   an initial appearance before the magistrate judge on this

18   alleged violation.  The defendant previously acknowledged the

19   violation before this Court.

20       The violation alleges that by virtue of matters that are

21   set forth -- transactions that are set forth in a case filed

22   here in this Court in Covington Criminal Action 21-28, that

23   the defendant sold controlled substances or distributed

24   controlled substances on six occasions and that gave rise to

25   that second case.

1    The defendant then admitted to those transactions and was

2    sentenced in that proceeding.  That proceeding is not

3    currently before the Court, but he was sentenced to a term of

4    incarceration of 220 months with six years of supervision to

5    follow.

6    The alleged violations would constitute a Grade A

7    violation of supervised release.  And together with the

8    defendant's criminal history category, which would be taken

9    from his presentence report, the original presentence report

10   in the 2013 case, his Criminal History Category VI would give

11   rise to a nonbinding guideline range of 33 to 41 months.

12   However, the statute under which the defendant was

13   originally convicted in the 2013 case would cap any potential

14   term of incarceration to 36 months.  So the range becomes 33

15   to 36 months, if established.  And the Court may also reimpose

16   any term of supervised release to follow inasmuch as there is

17   no upper limit for supervision with regard to the 2013

18   conviction, which the defendant appears here today on the

19   violations that are alleged.

20   So we'll proceed, then, with what's listed as violation

21   number one, the single violation listed in the original

22   report.  It's also listed as the first violation to that

23   addendum that I had referenced earlier.

24   Mr. Winslow.

25   MR. WINSLOW:  Your Honor, the United States will call

*DONOHO - Direct*                                                              7

1    Officer Shawn Donoho.

2            SHAWN DONOHO, GOVERNMENT'S WITNESS, SWORN

3            THE COURT:  Thank you.

4        Mr. Winslow, you may proceed.

5                        DIRECT EXAMINATION

6    BY MR. WINSLOW:

7    Q.   Good morning, Mr. Donoho.

8    A.   Good morning.

9    Q.   Could you introduce yourself to the Court, starting with

10   your name and what you do for work?

11   A.   My name is Shawn Donoho.  I'm a United States Probation

12   Officer assigned to the Cincinnati office of the Southern

13   District of Ohio.

14   Q.   As a supervised release probation officer, did you

15   supervise the defendant, Clarence Toney, in case 13-cr-20?

16   A.   I did.

17   Q.   Are you prepared to testify about that supervision today?

18   A.   I am.

19   Q.   Was a judgment entered against Clarence Toney on

20   October 30th, 2013, in case number 13-cr-20, based on the

21   defendant's guilty plea to seven counts of distribution of

22   heroin?

23   A.   There was.

24   Q.   And was he sentenced to a term of 120 months'

25   imprisonment in that case?

1    A.   Yes, he was.

2    Q.   And was that sentence subsequently reduced to 104 months?

3    A.   Yes, it was.

4    Q.   Was the defendant released from the Bureau of Prisons for

5    that term of imprisonment on October 1st, 2020?

6    A.   Yes, he was.

7    Q.   Now, in this 13-cr-20 case, was the defendant given a

8    term of supervised release?

9    A.   Yes, he was.

10   Q.   Did he start that term of supervised release on

11   October 1st, 2020?

12   A.   Yes.

13   Q.   And what was the first thing you did in terms of your

14   involvement in supervising the defendant?

15   A.   I met with him in the days subsequent to his release,

16   specifically it was October the 6th of 2020, and reviewed the

17   conditions of supervision contained in the judgment and

18   commitment order with him and had him sign on page four of

19   that document.

20        MR. WINSLOW:  Judge, may I approach the witness?

21   I've got that signed conditions.

22        THE COURT:  Yes, sir.  If you'd like to show that to

23   Mr. McBride.

24        MR. WINSLOW:  Absolutely.

25        MR. MCBRIDE:  Yes, sir.  Thank you.

*DONOHO - Direct*                                                      9

1        MR. WINSLOW:  Judge, would you like a copy?

2        THE COURT:  I'm sorry, what are you referencing?

3        MR. WINSLOW:  It's the 2013 judgment.

4        THE COURT:  I can take judicial notice of it; I don't

5    need a copy.

6        THE WITNESS:  Thank you.

7    BY MR. WINSLOW:

8    Q.   Mr. Donoho, what is Exhibit 1?

9    A.   It is a filed copy of the judgment and commitment order

10   in the case you mentioned, 2:13-cr-20.

11   Q.   Thank you.

12       MR. WINSLOW:  And Judge, I know the Court just

13   indicated the Court could take judicial notice; I would ask

14   the Court to take judicial notice of the judgment at this

15   time.

16       THE COURT:  I will.  And the judgment will also be

17   admitted for purposes of this hearing, Exhibit 1 to the

18   government's proceeding.

19       MR. WINSLOW:  Thank you, Your Honor.

20   BY MR. WINSLOW:

21   Q.   Mr. Donoho, you had testified that you had met with

22   Mr. Toney and gone over the terms of supervision; correct?

23   A.   Correct.

24   Q.   If you go to page four of this Exhibit 1, there are some

25   signatures at the bottom; do you see those?

DONOHO - Direct                                                    10

1    A.    Yes, I do.

2    Q.    Whose signature is at the bottom of the exhibit?

3    A.    At the bottom, the signature is mine.

4    Q.    Okay.  And that's the lowest signature on the page?

5    A.    Correct.

6    Q.    And above that, whose signature is that?

7    A.    It's the defendant, Mr. Clarence Toney.

8    Q.    And above his signature, does it say, I fully understand

9    the conditions and have been provided a copy of them?

10   A.    It does.

11   Q.    And did he sign this after you discussed the conditions

12   of supervised release with him?

13   A.    Yes, he did.

14   Q.    If you flip to the previous page, I think it's

15   page three.  There are a number of terms of supervised

16   release.  Are you there, sir?

17   A.    Yes, I am.  Sorry.

18   Q.    If you look at the top of the document, it states, The

19   defendant shall not commit another federal, state, or local

20   crime.

21         Did I read that correctly?

22   A.    Yes, you did.

23   Q.    Was that a condition of supervised release that you

24   reviewed with the defendant, Mr. Toney?

25   A.    Yes, I did.

1   Q.   Did the defendant violate the condition that he not

2   commit another federal, state, or local crime?

3   A.   Yes, he did, by virtue of the -- I'm sorry.  Yes, he did.

4   Q.   Okay.  I'd like to talk about how he violated.  Was the

5   defendant subsequently indicted in a six-count indictment on

6   May 13, 2021, in this court in case number 21-28?

7   A.   Yes, he did.

8   Q.   I would like to go through each of those counts briefly

9   with you, sir.  Did Count 1 allege the defendant distributed

10  fentanyl on December 3rd, 2020?

11  A.   Yes.

12  Q.   Did Count 2 allege the defendant distributed fentanyl on

13  December 4, 2020?

14  A.   Yes.

15  Q.   Did Count 3 allege the defendant distributed fentanyl and

16  heroin on December 7, 2020?

17  A.   Yes.

18  Q.   Did Count 4 allege the defendant distributed fentanyl on

19  December 8, 2020?

20  A.   Yes.

21  Q.   Did Count 5 allege the defendant distributed fentanyl and

22  heroin on December 10, 2020?

23  A.   Yes.

24  Q.   Did Count 6 allege that the defendant distributed

25  fentanyl on December 14th, 2020?

*DONOHO - Cross*                                                                 12

1    A.   Yes.

2    Q.   Did the defendant subsequently plead guilty to all counts

3    in that indictment in that case on July 23rd, 2021?

4    A.   He did.

5    Q.   And did the Court subsequently enter a judgment against

6    the defendant that's reflected at Exhibit 1 on November 5th,

7    2021?

8    A.   Yes.

9              MR. WINSLOW:  Your Honor, with the admission of

10   Government's Exhibit 1, I have no more questions for

11   Mr. Donoho.

12             THE COURT:  All right.  Thank you.

13        Mr. McBride.

14             MR. MCBRIDE:  Thank you, Your Honor.

15                          CROSS-EXAMINATION

16   BY MR. MCBRIDE:

17   Q.   Good morning.  How are you this morning?

18   A.   Good morning.  I'm fine; how are you?

19   Q.   Good, good.  I'm going to follow up a few questions from

20   Mr. Winslow.

21        How long prior to Mr. Toney's conviction did you

22   supervise Mr. Toney?

23   A.   It would have been approximately --

24             THE COURT:  2013 or the 2021 case, Mr. McBride?

25             MR. MCBRIDE:  In toto, Your Honor.

*DONOHO - Cross*                                                    13

1      THE COURT:  All right.

2   A.   He was released onto supervision on October, I think it

3   was the 3rd.  So let me find the right document.  I'm sorry.

4   October 1st of 2020, he pled guilty, July 23rd, 2021, so

5   roughly 18 months.

6   Q.   Eighteen months.  All right.

7   A.   Correct.

8   Q.   Now, during that period of time, I know he had some

9   positive urine screens; correct?

10  A.   I'm sorry, he had what?

11  Q.   Did he have any positive urine screens during any of that

12  period of time?

13  A.   Yes, sir, he did.

14  Q.   And it's the practice in the Southern District of Ohio

15  not to violate on the first screen; correct?

16  A.   Yes, sir, that's correct.

17  Q.   And what's the basis for continuing supervision or not --

18  pardon me, not violating when there's a urine screen?

19  A.   Well, it's, again, our policy, the policy of the Southern

20  District of Ohio, to allow individuals plenty of time to

21  engage with treatment services.  Particular attention is paid

22  to whether or not someone is attending meetings as they are

23  directed and instructed.

24      And we also understand that with the frequency of the

25  testing that there is a time-lapse that can occur.  You may

DONOHO - Cross                                                    14

1    have multiple positive tests, even though the individual has

2    ceased his use of marijuana --

3    Q.   So, it's your --

4    A.   -- that's the basis.

5    Q.   I'm sorry, sir; I didn't mean to interrupt you.

6    A.   You're fine.

7    Q.   So, during that period of time, Mr. Toney was complying

8    otherwise with the terms of his supervision up to his

9    indictment?

10   A.   Yes, he was.

11   Q.   As far as you know.  And he was cooperative with you?

12   A.   Yes, he was.

13   Q.   All right.  And he was polite with you?

14   A.   Yes, sir.

15   Q.   All right.  And was he candid with you when you had

16   meetings with him?

17   A.   Yes.

18   Q.   All right.  Thank you, sir.

19          MR. MCBRIDE:  That's all the questions I have.

20          THE COURT:  I have just a few, and that may generate

21   some questions from counsel.

22      Officer Donoho, you're familiar with the provision of

23   Title 18, Section 3583, Subsection (d), aren't you?

24          THE WITNESS:  Yes, sir.

25          THE COURT:  You're aware of the number of times that

1    an individual may have a positive screen and that not be the

2    result of revocation?

3              THE WITNESS:  Yes, sir.

4              THE COURT:  And Mr. Toney, in this case, had more

5    than one violation, didn't he?

6              THE WITNESS:  Yes, sir, he did.

7              THE COURT:  He had 11 positive urine screens for

8    using marijuana and two dilutes.

9              THE WITNESS:  Yes, sir, that's correct.

10             THE COURT:  And that occurred during a lengthy period

11   of time between October 2020, for the positives, to

12   February 24th, 2021.

13             THE WITNESS:  That sounds correct.  I don't have the

14   information in front of me; but, yes, sir, that sounds right.

15             THE COURT:  Do you have any information that would

16   indicate that if a person uses marijuana, an occasional user,

17   on October 6, 2020, that marijuana would still be in his

18   system in February of 2021?

19             THE WITNESS:  Your Honor, of course, I have not

20   received training from any laboratory, but I can state fairly

21   conclusively that that would not -- that marijuana would not

22   continue to be in his system roughly four months later, that's

23   correct.

24             THE COURT:  So this was not an isolated use.

25             THE WITNESS:  No, sir.

*DONOHO - Redirect*                                                          16

1          THE COURT:  Although Mr. Toney was polite to you, it

2    appears that he was using at least on more than one occasion

3    while he was on supervision?

4          THE WITNESS:  Yes, sir, that's correct.

5          THE COURT:  And that was not reported to the Court.

6          THE WITNESS:  It was ultimately reported in the

7    February -- I believe it was the February report, the

8    supervision report.

9          THE COURT:  That would have been the time that Judge

10   Bunning would have approved no action on April 15th of 2021?

11         THE WITNESS:  I'm sorry.  April, yes, sir, that's

12   correct.

13         THE COURT:  All right.  That's all I have.

14      Mr. Winslow, any additional questions?

15         MR. WINSLOW:  Just one brief question, Your Honor.

16         THE COURT:  Yes, sir.

17                      REDIRECT EXAMINATION

18   BY MR. WINSLOW:

19   Q.   There was some questions about dates, so I just want to

20   get the date that the defendant was arrested in this --

21   sorry -- in the subsequent 21-28 case.  Was the defendant

22   arrested on May 17, 2021, based on a warrant in that

23   2021 case?

24   A.   May -- I'm sorry, you said May 17, 2021?

25   Q.   That's correct.

1    A.   Yes, that was the date.

2              MR. WINSLOW:  Thank you, Your Honor.

3              THE COURT:  Mr. McBride, anything else?

4              MR. MCBRIDE:  No, Your Honor.

5              THE COURT:  Thank you, Mr. Winslow.

6         Mr. Winslow, any additional testimony or evidence you

7    would like to offer?

8              MR. WINSLOW:  No, Your Honor.

9              THE COURT:  Officer Donoho, if you wouldn't mind

10   handing that document, the exhibit, to the clerk.

11        Mr. McBride, any testimony or evidence you would like to

12   offer on the violation?

13             MR. MCBRIDE:  No, sir.  But Mr. Toney would like to

14   allocute at the appropriate time.

15             THE COURT:  Would the parties like to briefly

16   summarize their position as to whether the government has

17   proven by a preponderance of the evidence that, in fact, the

18   defendant violated the conditions of supervised release by

19   committing the violation as outlined in the original report?

20        Mr. Winslow?

21             MR. WINSLOW:  Your Honor, the United States believes

22   that they satisfied that condition -- that proof for violation

23   number one.

24        Mr. Donoho testified that while the defendant was on

25   supervised release, he was subject to a condition that he not

1    commit another federal crime.  He was subsequently indicted

2    for six drug counts in the '21 case.  Mr. Donoho testified

3    that he pleaded guilty to all six counts, and he was

4    subsequently convicted, and there was a judgment entered in

5    that case.

6           THE COURT:  All right.  Thank you.

7      Mr. McBride?

8           MR. MCBRIDE:  Your Honor, the government has

9    sustained its burden.  The purpose of my questioning of

10    Probation Officer Donoho was to show that otherwise he was

11    compliant and perhaps some mitigation, Your Honor.

12           THE COURT:  All right.

13           MR. MCBRIDE:  Thank you.

14           THE COURT:  All right.  Thank you.  I do conclude,

15    based upon the evidence presented, that the United States has

16    established and has met its burden of proving that the

17    defendant violated the conditions of supervision by committing

18    offenses that were later charged in 2021, Covington Criminal

19    Action Number 21-28, in which the defendant later appeared

20    before the Court and admitted that he committed those

21    offenses, six offenses that are charged, Counts 1 through 6 in

22    that case.

23      Further, the United States has established that the

24    defendant was fully advised that he should not or could not

25    commit any additional violations of federal, state, or local

1    law.  And that he, in fact, acknowledged that by signing after

2    being advised, and he has, in fact, knowingly violated the

3    conditions of supervision.

4        As I advised the parties earlier, the potential penalties

5    in the case, the Court does begin from considering the

6    nonbinding guideline range.  This would be a Grade A violation

7    of supervision, and the Court does consider the guideline

8    range as a nonbinding range of 33 to 36 months, and the Court

9    may impose any additional period of supervised release to

10   follow.

11       So I will hear from the parties at this time in

12   allocution as to what penalty, if any, should be imposed for

13   the violation of supervised release currently before the

14   Court.

15       Mr. McBride, I'll hear from you and also from Mr. Toney.

16          MR. MCBRIDE:  Thank you, Your Honor.  Your Honor, the

17   purpose of my questioning of Officer Donoho was to support the

18   argument that this Court should impose no more than the

19   30 months with supervised release that happened before.  The

20   government has withdrawn violation number two, and the Court

21   dismissed it.

22       We would ask the Court not to go above the 30 months and

23   consider a minor downward variance, if the Court sees it to be

24   appropriate.  And I don't have a suggestion on that, Your

25   Honor.

20

1          THE COURT:  All right.

2          MR. MCBRIDE:  Thank you.

3          THE COURT:  Thank you.

4       Mr. Toney.

5          MR. MCBRIDE:  Is it all right if Mr. Donoho remain

6    seated, Your Honor?

7          THE COURT:  I'm sorry, Mr. Toney remain seated?

8          MR. MCBRIDE:  Or Mr. Toney remain seated?

9          THE COURT:  Yes, if he wishes, he may.

10         THE DEFENDANT:  Good morning, Your Honor.  I'm here

11   by special appearance, not general appearance; and I reserve

12   all my rights with explicit reservation without prejudice.

13      Your Honor, does the record reflect that I repent my

14   sins?

15         THE COURT:  No, sir, it doesn't.  Your sins are not

16   before the Court, sir.  It's a violation of law that's before

17   the Court.

18         THE DEFENDANT:  Your Honor, I'm not here to testify.

19   I cannot settle this matter today.

20         THE COURT:  I'm sorry that you feel that way.  And I

21   have reviewed some of your filings in Court, Mr. Toney.  Are

22   you a sovereign citizen at this point?

23         THE DEFENDANT:  No, I'm not.

24         THE COURT:  Well, what's the purpose of the last two

25   filings you made in this case?

1          THE DEFENDANT:  Your Honor, does the record reflect

2 that I have accepted the case summary and complaint of these

3 matters and returned these matters?

4          THE COURT:  I don't know what you're talking about.

5 Tell me what you're talking about.

6          THE DEFENDANT:  Your Honor, does the record reflect

7 that I do not argue any fact, law, jurisdiction, or venue in

8 this case?

9          THE COURT:  I'm sorry.  Say that again.  Does the

10 record reflect what?

11          THE DEFENDANT:  That I do not argue any fact, law,

12 jurisdiction, or venue in this case?

13          THE COURT:  No, the record does not reflect that.

14          THE DEFENDANT:  Your Honor, I request that you issue

15 me the appearance bond and waive all public costs.

16          THE COURT:  That's denied.

17          THE DEFENDANT:  Your Honor, I request that you close

18 the account and issue the order of the court to me.

19          THE COURT:  There is no account at issue, sir.

20          THE DEFENDANT:  Your Honor, I request that you adjust

21 and settle all public charges by exemption in accordance with

22 public policy; and I request discharge.

23          THE COURT:  That request is also denied.

24          THE DEFENDANT:  Your Honor, I am not here to testify.

25       Your Honor, are you making me a new offer?

1        How may I settle this offer today?

2           THE COURT:  No offers are made to you, sir.  This is

3    a criminal proceeding.  This is not a matter of your being

4    alleged to be a sovereign citizen or those matters outlined in

5    the personal filings that you've made.

6           THE DEFENDANT:  Your Honor, may I have the order of

7    the Court?

8           THE COURT:  No, sir, you may not.  I will give you

9    one direction, sir.  You need to take this proceeding

10   seriously.  The sovereign citizen information that you have

11   provided is not in mitigation, and you need to take this

12   matter seriously.

13          THE DEFENDANT:  Are you attempting threats, coercion,

14   duress, force, and trying to get me to accept something from

15   you on the benefit of you or a third party?

16          THE COURT:  No, sir.  I'm providing you with

17   information.

18          THE DEFENDANT:  Is case number 21-cr-28 and 13-cr-20

19   associated with any CUSIP numbers?

20          THE COURT:  Any what numbers?

21          THE DEFENDANT:  CUSIP.

22          THE COURT:  I'm not sure I know what that is, sir.

23   What is that?

24          THE DEFENDANT:  Does CUSIP stand for Community on

25   Uniform Identification Procedures [sic]?

23

1          THE COURT:  You tell me.  I don't know what that
2     stands for.
3          THE DEFENDANT:  Are you attempting --
4          THE COURT:  No, sir.  I'm sorry, I'm asking you a
5     question.  What does that stand for again?
6          THE DEFENDANT:  Community on Uniform Identification
7     Procedures [sic] --
8          THE COURT:  What is that?
9          THE DEFENDANT:  -- are you aware of that?
10         THE COURT:  What is that?
11         THE DEFENDANT:  That's the number that should be
12    associated with the case numbers.  Are you aware of that?
13         THE COURT:  I don't know what you're talking about,
14    sir.
15         THE DEFENDANT:  Are you attempting to administer my
16    estate without my permission?
17         THE COURT:  This is not an estate matter, sir.  This
18    is a criminal matter, and you need to take it seriously.
19         How many pages of these questions do you have, sir?
20         Sir, you're entitled to make a statement in mitigation of
21    any penalty that might be imposed by this Court; and you're
22    not addressing the issues before the Court.  So you need to
23    make a statement, and it needs to be relevant.  Otherwise, you
24    don't need to make a statement.
25         THE DEFENDANT:  How may I settle this matter today?

1          THE COURT:  This is not a financial matter, sir.

2     This is a matter which I'm about to announce what sentence, if

3     any, should be imposed for your violation of supervised

4     release; you need to take it seriously.  That's the fourth

5     time I've told you that, I believe.

6          THE DEFENDANT:  I recognize compel performance;

7     however, I'm unaware of any international admiralty, maritime,

8     or commercial agreement bearing my signature that will cause

9     me to acquiesce to your demands.

10        If you will present the documents bearing my signature, I

11    will meet your demands.

12         THE COURT:  What is admiralty?  Is that admiralty, is

13    that what you're referring to?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  What is admiralty in your mind, sir?  Do

16    you know what that is?

17         THE DEFENDANT:  Yes, I know exactly what it is.

18         THE COURT:  Well, tell me what it is.  Tell me.

19         THE DEFENDANT:  Is there another way we may settle

20    this matter today?

21         THE COURT:  No.  You're not responding to my

22    question, sir.  Tell me what you understand admiralty to be.

23         THE DEFENDANT:  Your Honor, may I have a firm offer,

24    please?

25         THE COURT:  No, sir.

1          THE DEFENDANT:  That will be all.

2          THE COURT:  All right.  Very well.

3      Mr. Winslow.

4          MR. WINSLOW:  May I approach the podium, Your Honor?

5          THE COURT:  Yes, sir, that's fine.

6          MR. WINSLOW:  We are here to discuss the defendant's

7   breach of trust in being released on supervised release in the

8   '13 criminal case.  That breach of trust is extremely serious

9   for several reasons I'd like to briefly outline for the Court;

10  and because of these reasons, the United States recommends a

11  guideline sentence of imprisonment for the supervised release

12  violation.

13      One, the timing of the violations makes the breach of

14  trust more serious.  The defendant committed these new

15  violations of law, new drug trafficking violations, within two

16  months and two days after being released from imprisonment on

17  the '13 case.  The fact that he so quickly violated makes the

18  breach of the trust more serious.

19      Two, one of the statutory factors that the Court

20  considers, the nature and circumstances of the offense, makes

21  these violations more serious.  Now, that's the offense of

22  conviction, which is the 2013 conviction.  The defendant was

23  convicted in a very serious case of distributing seven times,

24  distributing heroin, which in 2013 and still today was a very

25  serious drug.

1        He got a firearm enhancement in that case.  He got a

2    two-level bump in his criminal history for committing that

3    2013 crime while on parole for another drug trafficking crime.

4        And so in light of that context, the fact that the

5    defendant committed these new violations that involve drugs so

6    quickly makes the breach of trust that more serious.

7        The history and characteristics of the defendant also

8    make the breach of trust more serious.  He has multiple drug

9    trafficking convictions, multiple prior revocations.  He

10   admitted in his 2013 PSR that he's never had legitimate

11   employment and that he was unemployed then.

12       So when the Court allowed him to be released on

13   supervised release, it was a serious breach of trust by the

14   defendant to continue to engage in criminal activity in light

15   of his history and characteristics.

16       Finally, Your Honor, the need for adequate deterrence and

17   to protect the public is important factors here.  The

18   defendant told the Court -- it was, I think, Judge Thapar at

19   the time in 2013 -- it's reflected in his PSR at paragraph 54:

20   This is the last time I get in trouble.  And that was not

21   true.

22       And the defendant's background suggests that he's still a

23   danger to the community and to the public; and he's made no

24   statements in mitigation to those facts here today, Your

25   Honor.

1          THE COURT:  How is the Court to take the defendant's

2     statements to the Court?  It appears that he's not being

3     serious; that he's not intending to reform his conduct; and at

4     the time that he was sentenced in the last hearing, I actually

5     reduced the sentence below his guideline range down to

6     30 months.  And I did not impose the term of incarceration

7     that the government requested in the 2021 case.

8          I believe the government was requesting 228 months, and I

9     dropped it down to 220.

10          MR. WINSLOW:  That's correct, Your Honor.

11          THE COURT:  This defendant did show some -- a bit of

12     remorse.  He did acknowledge the violations of law by entering

13     a guilty plea and admitting to the violation of supervision

14     when he was sentenced, but at this point, he's backtracked on

15     that.

16          We've proceeded here to prove the violations.  He didn't

17     acknowledge the violations; you had to prove those.  And now

18     he's making light of this very serious proceeding.

19          Now, perhaps that's because he's serving a very lengthy

20     sentence.  I don't know what his conduct has been while he's

21     been in custody; I don't have records of that.  But if we look

22     at post-sentencing conduct and we look at these recent filings

23     that he's made that I just referenced and asked him about, as

24     well as his own statements here today, they don't provide any

25     basis to go below the guidelines at this point.  They

1      certainly do not.

2              MR. WINSLOW:  The United States agrees, Your Honor.

3              THE COURT:  All right.  When the Court considers

4      potential penalty for violation of supervised release, I do

5      begin from the properly calculated guideline range, in this

6      case 33 to 36 months.  And then I consider the factors of

7      Title 18, Section 3553(a), that have been incorporated through

8      3583.

9          They, of course, do include the nature and the

10     circumstances of the offense, as well as the history and

11     characteristics of the defendant.  Both of those factors are

12     highly negative for this defendant.

13         He has shown a long history of drug trafficking activity,

14     very dangerous activities.  So when you look at that continued

15     conduct, that's certainly not a positive characteristic.  It's

16     aggravating, as is his other history and characteristics as

17     he's demonstrated amply here today by his statements to the

18     Court.  He's not taking this proceeding seriously.

19         It is the nature of sovereign citizens, and the Court

20     does on occasion deal with those individuals that don't

21     believe that the Court has jurisdiction over them, or they

22     think that they're a corporation or they think something else

23     other than taking criminal charges the way they should in

24     attempting to reform conduct while they are in custody.  This

25     defendant has not demonstrated he intends to do that.

1          Instead, he's shown that he would prefer to make a

2     mockery of the proceedings, which this Court will not allow.

3     The violation is serious, as indicated by the testimony

4     presented here today.

5          While the defendant was polite to his probation officer,

6     he was also engaging in new criminal conduct; and he was

7     violating conditions of supervision as well.

8          They did not result in revocation proceedings; and quite

9     frankly, had they been brought before the Court at that time,

10    there would have had to have been -- those urine tests would

11    have had to have been sent off.  So I'm not intending to

12    impose any penalty for those violations that were excused by

13    Judge Bunning.  My point is it's just additional conduct that

14    indicates the defendant is not intending to comply with the

15    law.

16         It is necessary that the Court provide deterrence, not

17    only specific deterrence to this defendant, but general

18    deterrence to others that might be inclined to commit similar

19    offenses, specifically violations of supervision.

20         And this defendant has also shown that he lacks any

21    respect for the law.  And so under those circumstances, and

22    when I consider those factors, at this point, those 3553

23    factors, they would not support a sentence of a term

24    originally intended by this Court of 30 months.  This

25    defendant has demonstrated in very loud terms that a more

1    lengthy period of incarceration is necessary, based upon the

2    violations that the government has now proven, the violation

3    of supervision, excuse me, violation number one, which does

4    consist of six separate counts of violations of federal law.

5    So at this stage, the Court believes that 36 months is

6    necessary.

7        I also consider the other factors of 3553 that have been

8    incorporated through 3583, including rehabilitation, but the

9    Court may certainly address issues of rehabilitation as part

10   of supervision, which I am going to impose in this case as

11   well.

12       So there will be a six-year period of supervised release

13   as well in this particular case. I do believe it is necessary

14   that the defendant understand that he'll be under supervision

15   both for the 2021 case as well as the 2013 case, and he could

16   receive separate penalties for each one if he does commit

17   violations when he is released and if he is released.

18       I also consider issues of unwarranted sentencing

19   disparities among defendants with similar records who have

20   been found guilty of similar conduct. But to impose a term of

21   incarceration with supervision to follow, the term of

22   incarceration within the guideline range would not constitute

23   an unwarranted sentencing disparity.

24       So after considering all the information that has been

25   provided, it's my determination that to impose anything less

1    than 36 months' incarceration would unduly diminish the

2    seriousness of the defendant's conduct, would not provide

3    proper deterrence, and would not provide a proper punishment

4    for the defendant's violations.

5         And I'll also note that under the guideline, 7B1.3,

6    subsection (f), would also support this Court running the

7    period of incarceration consecutively to the term of

8    incarceration imposed in the 2021 case.  And there's no reason

9    not to do that.  The defendant certainly has not shown a

10   reason.

11        And while counsel has made some arguments in mitigation,

12   they are overwhelmed by the aggravating factors that this

13   defendant has demonstrated here today.

14        So I will announce the sentence; and it will be the

15   sentence of the Court, pursuant to the Sentencing Reform Act

16   of 1984, as modified by the decisions in *Booker* and *Fanfan*, I

17   do find the following sentence to be minimally sufficient but

18   not greater than necessary to meet all of the purposes of

19   Title 18, Section 3553(a).

20        And therefore, it will be the judgment of the Court that

21   the defendant, Clarence Toney, III, also known as Daniel

22   Bowler, and also known as DB&E, will be committed to the

23   custody of the Bureau of Prisons for a term of 36 months.

24   That will be consecutive to the term of incarceration imposed

25   in Covington Criminal Action 21-28.

1     Upon release, the defendant will be placed upon

2  supervised release in this case to a term of six years.  And

3  within 72 hours of release from the custody of the Bureau of

4  Prisons, he must report in person to the probation office in

5  the district in which he is released.

6     While on supervised release, he may not commit another

7  federal, state, or local crime.  He must comply with the

8  mandatory and the standard conditions that have been adopted

9  by the Court, and that will be set forth in the judgment to be

10  entered in this case.

11     The special conditions which the Court also concludes are

12  necessary to provide proper supervision over the defendant and

13  proper rehabilitative services are as follows:  First, he may

14  not use or consume alcohol.  Next, he may not purchase,

15  possess, use, distribute, administer any controlled substance

16  or paraphernalia relating to controlled substances except as

17  prescribed by a physician.  And he may not frequent places

18  where controlled substances are illegally sold, used,

19  distributed or administered.

20     And he may not use or consume marijuana or marijuana

21  products, even if that controlled substance were to be

22  prescribed to him by a physician, licensed professional, or

23  other person, and even if the substance were to be legal in

24  the jurisdiction in which he's located for consumption or use.

25     The Court also will impose a search condition in this

1    case.  The defendant must submit his person, as well as any

2    offices, properties, homes, residences, vehicles, storage

3    units, papers, computers, other electronic devices, cloud

4    storage locations, or data storage locations, to a search

5    conducted by the United States Probation Office.

6         The failure to submit to a search will be grounds for

7    revocation of supervision.  And the defendant must let all

8    occupants know that his premise would be subject to a search

9    according to this condition.

10        The defendant will also be required to participate in a

11   substance abuse treatment program and follow the rules and

12   regulations of that program at the direction and discretion of

13   the probation office.

14        He's required to attend all sessions and pay all or a

15   portion of the cost of treatment services pursuant to General

16   Order 22-09, which does set a sliding scale for payment based

17   upon an individual's ability to pay.  And the United States

18   Probation Office will be responsible for supervision of his

19   participation in the program.

20        He's also required to participate in urinalysis testing

21   or any other form of substance abuse testing that is required

22   or directed by the United States Probation Office.

23        You must refrain from obstructing or attempting to

24   obstruct or tamper in any fashion with the efficiency and

25   accuracy of any substance abuse testing that is required as a

1   condition of supervision.  And you may not use any substance

2   that interferes with the accuracy of substance abuse testing.

3       And that will be the judgment of the Court.

4       In just a moment I will ask the clerk to advise the

5   defendant of his appellate rights.  I'll not ask the defendant

6   to sign the acknowledgment inasmuch as he's not demonstrated

7   an indication in this proceeding today that he will comply

8   with requests of the Court, but I will ask the clerk to advise

9   him orally of his appellate rights and then provide him with a

10  copy of what she does read to him.

11      Before we do that, I'll ask counsel to state any

12  objections that they may have, first to my determination as to

13  revocation and the penalty that has been announced.  Second

14  would be any objections under *United States vs. Bostic*.  Under

15  that decision from the Sixth Circuit, any objections not

16  previously raised should be raised at this time so that they

17  may be addressed by the Court to be properly preserved for

18  review on appeal.

19      And then, finally, if either party would like the Court

20  to make additional findings to support any of the

21  determinations that have been announced, I'll be happy to make

22  those further findings, if requested to do so.

23      Mr. Winslow.

24          MR. WINSLOW:  Nothing from the United States, Your

25  Honor.

1          THE COURT:  Mr. McBride.

2          MR. MCBRIDE:  No objections, Your Honor.

3          THE COURT:  Madam Clerk, if you would please orally

4    advise Mr. Toney of his appellate rights and provide him with

5    a copy of his acknowledgment of rights.

6          COURTROOM DEPUTY:  Yes, Your Honor.

7          (The form entitled "Court's Advice of Right to

8    Appeal" was read aloud in open court by the clerk, and said

9    form was signed by the defendant.)

10          THE COURT:  Thank you.

11       Mr. McBride, has the acknowledgment of rights been placed

12   on counsel table?

13          MR. MCBRIDE:  It is, Your Honor.  We received it

14   before the proceedings began.  Mr. Toney had it in front of

15   him before he -- during the reading of the appellate rights.

16       May I ask Your Honor, do you want me to sign the

17   appellate rights waiver?

18          THE COURT:  I'll ask you to sign the copy that the

19   clerk has, that way Mr. Toney can keep the copy that was just

20   provided to him.  And you can sign the copy that was just read

21   from, and then that will be filed in the record.

22          MR. MCBRIDE:  Yes, Your Honor.

23          THE COURT:  I'll indicate that the defendant did not

24   sign the acknowledgment of rights.

25          MR. MCBRIDE:  I will do that right now, if it's all

36

1   right, Your Honor.

2              THE COURT:  Yes, sir.  That's fine.

3              MR. MCBRIDE:  I've signed both, Your Honor.  I'll

4   give one copy to the clerk.

5              THE COURT:  All right.  Thank you.

6        Any other issues to take up in the case at this time?

7              MR. WINSLOW:  Nothing from the United States, Your

8   Honor.

9              THE COURT:  Thank you.

10       Mr. McBride?

11             MR. MCBRIDE:  Nothing from the defense, Your Honor.

12             THE COURT:  Mr. McBride, thank you for agreeing to

13  take these cases on behalf of defendants in this district

14  under the Criminal Justice Act.

15             MR. MCBRIDE:  My honor, Your Honor.

16             THE COURT:  Yes, sir.

17       We'll be in recess.

18       (Proceedings concluded at 11:48 a.m.)

19                           - - -

20                  C E R T I F I C A T E

21             I, ELAINE S. HABERER, RPR, FCRR, certify that the
    foregoing is a correct transcript from the record of
22  proceedings in the above-entitled case.

23

24   _/s/ Elaine S. Haberer___           April 4, 2024
    ELAINE S. HABERER, RPR, FCRR         Date of Certification
25  Official Court Reporter

37

<pre>
 1                              INDEX

 2   GOVERNMENT'S WITNESSES

 3   SHAWN DONOHO
     Direct Examination............................. Page 7
 4   Cross-Examination.............................. Page 12
     Redirect Examination........................... Page 16
 5

 6                         - - -

 7   GOVERNMENT'S EXHIBITS

 8
     Exhibit          Description         Identified  Admitted
 9   1         Judgment and commitment order       9         9

10

11
                              - - -
12

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>